# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| **BART COLLIDA** ) | | Complaint for a Civil Case |
| **Plaintiff,** ) | | |
| ) | | Case No.     4:19-cv-1938 |
| v. ) | | |
| ) | | JURY TRIAL DEMANDED |
| **WRIGHT TREE SERVICE COMPANY,** ) | | |
| **Defendant.** ) | | |

## CIVIL COMPLAINT

Plaintiff Bart Collida alleges as follows:

## INTRODUCTION

1. In this civil action, Plaintiff Bart Collida seeks judgment against Defendant Wright Tree Service Company for common law trespass and statutory trespass pursuant to MO REV § 537.340 after Wright Tree Service trespassed on Mr. Collida's property by parking their vehicles on his driveway while excessively over-trimming and lopping off trees on his property without proper authority and with disregard to Mr. Collida's ownership and possessory interests rights.

2. Plaintiff Mr. Collida also asserts the federal question of the Constitutional Taking Clause of the Fifth Amendment because Defendant claimed governmental authority for their actions at the time of their actions.

## PARTIES

3. Plaintiff Bart Collida is a citizen of Missouri who is a 25-year plus resident and landowner in the city of Wildwood.

1

4. Bart Collida
   828 St. Paul Rd.
   Wildwood, MO 63021
   636-391-0220
   Biggsmountain@yahoo.com

5. Defendant Wright Tree Service Company, subsidiary of Wright Service Corp. (incorporated in Iowa), is an employee-owned vegetation management contractor providing services in North America and headquartered in Des Moines, Iowa with its principal place of business in Des Moines, Iowa.

6. Wright Tree Service
   Scott Packard, Chairman, President and CEO
   P.O. Box 1781
   Des Moines, IA  50306
   5930 Grand Avenue, West Des Moines. IA 50266
   515-277-6291
   info@wrighttree.com
   Incorporation Agent: CT Corporation Systems, 400 E. Court Ave, Des Moines, IA 50309

## JURISDICTON AND VENUE

7. Plaintiff brings his complaint under federal diversity jurisdiction, 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

8. Plaintiff Bart Collida is a citizen of the State of Missouri.

9. Defendant Wright Tree Service is incorporated under the laws of the State of Iowa, and has its principal place of business in the State of Iowa.

10. The amount in controversy is more than $75,000, not counting interest and costs of Court, because Plaintiff is seeking recovery from irreparable harm done to his property by Defendant in the form of statutory damage allowances, non-pecuniary

2

      or general damages for loss of enjoyment of life, amenities and emotional harm, as well as pecuniary or special damages for repair costs, labor, and devaluation of property.

11. Jurisdiction is also proper under Federal Question subject matter jurisdiction based on the Fifth Amendment to the Constitution, also known as the "Taking Clause." 28 U.S.C. § 1331.

12. Supplemental jurisdiction is proper for the State causes of action because all claims form part of the same case or controversy under Article III of the Constitution. 28 U.S.C. § 1367(a).

13. Venue is proper in the United States District Court for the Eastern District of Missouri pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in St. Louis County, Missouri.

14. Divisional venue is proper in the Eastern Division because the events leading to the claim for relief arose in St. Louis County and Defendant employs workers and provides substantial services located in St. Louis County where it is subject to personal jurisdiction. 28 U.S.C. § 1391(d).

## FACTS

15. Defendant Wright Tree Service arrived on Friday morning, March 29, 2019 around 8:30 am to cut trees in the front yard of 828 St. Paul Rd. without landowner notification, landowner consent nor involvement because they claimed they have a

right to do anything they want to the trees (including cutting them down to the stubs if they so feel like it).

16. Plaintiff Mr. Collida saw Defendant Wright Tree Service personnel on his property and immediately approached and told them the importance of these trees and that he did not consent to their actions or presence on his property. Defendant Wright Tree Service said they where aware of the prior situation where a tree service over trimmed the trees four years ago, and were told to not trespass on the property. While protesting all actions by Wright Tree Service, and not consenting to the tree trimming or any actions by Wright Tree Service, Plaintiff Mr. Collida suggested that Wright Tree Service leave the cut brush where it falls in an effort to limit the amount of underbrush damage created by walking through and dragging out cut limbs and branches.

17. At this request, Defendant Wright Tree Service said they could do that, but first, the resident must sign an Ameren ticket which describes a number of policies and procedures. These policies are presented as standard procedures for Defendant Wright Tree Service to follow.

18. Plaintiff Mr. Collida asserted that these procedures are violations of Missouri's Timber Statute.

19. Plaintiff Mr. Collida declined to sign the ticket.

20. Plaintiff Mr. Collida further pointed out that Defendant Wright Tree Service had no authority to trim trees around cable yet they proceeded to lop off trees in order to

4

clear cable—the lowest hanging line, creating unsightly holes and extensive damage to trees in the tree line.

21. At about 1 pm the tree service packed up their equipment, proceeded to further trespass on Plaintiff Mr. Collida's property by parking their vehicles on his residence private drive. Plaintiff Mr. Collida told them they were trespassing and after a short discussion in which Defendant Wright Tree Service acknowledged their trespass on the private drive, they left for the day.

22. On Monday, April 1st, Defendant Wright Tree Service returned about 9 am without notification to Plaintiff Mr. Collida.

23. Plaintiff Mr. Collida immediately approached Defendant Wright Tree Service upon discovery of their presence to protest their presence and actions on his property.

24. Wildwood police officers arrived shortly thereafter upon being called by Defendant Wright Tree Service complaining that Mr. Collida was impeding their work progress by not allowing them to park on his private drive.

25. The police told Plaintiff Mr. Collida that they were there to make sure that "there was no trouble going on" because Defendant Wright Tree Service claimed he was stopping them from doing their work and that he was not to interfere with them.

26. The police officers did not ask to see written authority from Defendant Wright Tree Service for their presence and actions on private property nor ask them to leave the scene until the dispute is resolved.

27. Plaintiff Mr. Collida replied that the tree service cannot park their equipment on his private drive nor do they have consent to be present anywhere on the property including the line of trees.

28. The police officer confirmed that the private drive was in fact private property and then left without any further action or direction to Defendant Wright Tree Service.

29. Defendant Wright Tree Service continued cutting the line of trees and then broke for lunch.

30. Defendant Wright Tree Service returned approximately 1:30 pm that afternoon to continue cutting.

31. Ms. Inman, resident, co-landowner and wife of Plaintiff Mr. Collida, immediately appeared on the scene at 1:30 pm that day upon notification by Plaintiff Mr. Collida that Defendant Wright Tree Service was present on property and protested vehemently about the overcutting and decimation of the line of trees.

32. Plaintiff Mr. Collida was present as well.

33. Ms. Inman strenuously objected to Defendant Wright Tree Service presence and declared that they did enough damage to the trees that is irreparable and to leave the property immediately.

34. Two police officers were present at the scene but did little more than to stand by and observe the proceedings; neither Plaintiff nor Defendant called the officers to the scene—instead, the officers said neighbors called the police to check out the disturbance of a woman crying and in distress as if she was being attacked.

35. Ms. Inman was overwrought and distressed at the sight of the decimation and continued to exhort that the tree service people needed to leave. She was in tears, shaking, and could not control her emotions.

36. Plaintiff Bart Collida was distressed and speechless by the sight of the decimation and at the tumultuous emotions of Ms. Inman.

37. The next door neighbor, Mr. Mike Gauvain, was also present at the scene and witnessed the emotional state of Ms. Inman and was present to support her in any way he could.

38. The police officers at the scene threatened to arrest Ms. Inman for public disturbance because she was emotionally distressed and disturbed by the tree decimation and the effect it had on the entire property and neighborhood.

39. The police officers never asked for written documentation of authority for presence of Defendant Wright Tree Service at the property and did not ask Wright Tree Service to leave the premises.

40. At about 3 pm, Defendant Wright Tree Service left the scene claiming their work was done for the day.

41. Defendant Wright Tree Service returned at 8 am the next morning, April 2, 2019, to complete their decimation after informing both Ms. Inman and Plaintiff Mr. Collida on Monday, April 1st that they would return.

42. Plaintiff Mr. Collida and Ms. Inman were present and both spoke with Wright Tree Service personnel at 8 am Tuesday, April 2.

43. Ms. Inman explained that Defendant Wright Tree Service has no consent to perform their actions by the landowners and that the easement they contend they are contracted under is not valid and nonexistent.

44. Defendant Wright Tree Service proclaimed that they had an easement allowing them to cut trees on this property that extends within 10 feet of either side of the centerline of electrical lines.

45. Defendant Wright Tree Service was unable to state where they obtained this information and were unable to provide any written documentation for their assertions.

46. Ms. Inman thought that the language Defendant Wright Tree Service used to describe their authority sounded like the verbiage used in Missouri's Timber Statute.

47. Later, Ms. Inman verified that the verbiage was similar to the verbiage in MO REV § 537.340 which outlines the authority electrical suppliers may exercise without a recorded easement. MO REV § 537.340(2).

48. Yet, Defendant Wright Tree Service claimed a recorded easement so this provision does not apply if they in fact have a recorded easement.

49. However, Defendant Wright Tree Service can show no recorded easement because there isn't one with the landowners and was unable to show any written documentation for their presence on the property.

50. Furthermore, MO REV § 537.340(3) clearly states that an electric supplier is a cooperative not-for-profit and therefore the provisions under this Statute do not

apply to Defendant Wright Tree Service actions in any way, as Defendant Wright Tree Service and the company it is performing services for—in this case, Ameren UE, a for-profit electrical supplier headquartered in St. Louis, MO—are not cooperatives.

51. Ms. Inman was unable to stop Defendant Wright Tree Service from continuing their actions and they continued to lop off trees and destroy underbrush, grasses and shrubs.

52. Ms. Inman and Plaintiff Mr. Collida left the scene and Defendant Wright Tree Service continued with their decimation until about 3 pm.

53. Ms. Inman and Defendant Mr. Collida were sick to their stomachs upon the sight of the final decimation and continue to lament the destruction every day as they are forced to view the unsightly mess of their front yard.

54. Plaintiff Bart Collida has since spent many hours and money in an effort to repair and improve on the dead and injured trees, underbrush, shrubs and grasses by purchasing material, hiring professional landscapers, replanting, resodding and other activities to remediate the damage, but the damage is irreparable.

55. New trees, shrubs, plants and grasses that were replanted by Plaintiff Mr. Collida will take decades to grow to their full height and depth. These are decades that Mr. Collida can ill afford as he is in his 60s with no offspring.

## COUNT 1: COMMON LAW TRESPASS

56. Plaintiff incorporates by reference the allegations in the foregoing paragraphs of his complaint as fully set forth herein.

57. Bart Collida, Plaintiff, asserts that on March 29, 2019 the Defendant, Wright Tree Service, trespassed on his residential and possessed property by entering onto the land without his consent.

58. The Defendant arrived on his land at or about 12 p, m. noon to trim trees and proceeded to trim trees and remove timber until about 2 p.m. when they took a break and parked their vehicles and equipment on Mr. Collida's private drive.

59. Defendant returned to Plaintiff Mr. Collida's land to continue trimming trees until about 3 p.m.

60. On April 1, 2019, about 1 p.m. Defendant returned to continue trimming trees on possessed property of Plaintiff Mr. Collida.

61. The Defendant left around 3:00 pm and returned at 8 a.m. on April 2, 2019 to continue overcutting and clearing out underbrush and vegetation until about 2p.m. that day.

62. Both Plaintiff Mr. Collida and wife Ms. Inman, landowners and possessors, protested the actions of Defendant at all times.

63. Missouri Common Law Trespass does not require injury or harm.

64. A simple act of entering onto the land without consent is sufficient to show trespass. *Crook v. Sheehan Enter., Inc.* 740 S.W. 2d 333, 335 (Mo. App. 1987).

65. The landowner need not show ownership of the land to assert a trespass claim, but must have possessory interest and intent.

66. "[T]he central issue of a trespass action is violation of possession." *International Broth. of Elec. Workers v. Monsees*, 335 S.W.3d 105, 108 (Mo. App. W.D. 2011).

67. Here, Plaintiff Mr. Collida and wife Ms. Inman have owned, occupied and maintained the land since 1994.

68. The relief sought by Plaintiff Mr. Collida is to enjoin the Defendant from parking their equipment on private drive and entering upon Plaintiff Mr. Collida's owned and possessed land.

## COUNT II: STATUTORY TRESPASS VIOLATION MO REV § 537.340

69. The result of Defendant Wright Tree Service's actions left an unsightly mess and their actions are not consented to by the Plaintiff landowner.

70. Plaintiff Mr. Collida has a possessory interest in his front yard and the trees bordering his yard.

71. The stated policy used by Defendant Wright Tree Service is that "[e]ven trees that are well below the powerlines should be removed to prevent future interference."

72. The policy used by Defendant Wright Tree Service further states: "Stumps will not be grounded out."

73. This policy, Plaintiff asserts, results in invasive procedures that negatively impact the property by creating unsightly holes in the yard and dangerous conditions with the protrusion of stumps.

74. Plaintiff Mr. Collida has attempted to repair the damage but to no avail as the damage is irreparable and new trees, shrubs, grasses and plants will take decades to grow fully, conceivably beyond Plaintiff's lifetime.

75. Plaintiff Mr. Collida is seeking to recover treble damages for the costs he's incurred to replant and regrow the damaged areas caused by the Defendant and the emotional harm created to the landowners on the dates of the trespass as well as forever after due to the irreparable harm done to the property.

## COUNT III; CONSTITUIONAL VIOLATION OFAMENDMENT V: THE TAKING CLAUSE

76. While the Defendant is a private company, it is asserting governmental authority to cut trees at their discretion without private landowner consent using both State and Federal governmental law including MO REV § 537.340, Federal Department of Energy regulations of electrical suppliers and Missouri State Department of Energy regulations of electrical suppliers.

77. The Constitution prohibits "private property be taken for public use, without just compensation."

WHEREFORE, Plaintiff respectfully requests this Court:

    A.    Enter judgment against Defendant in an amount in excess of $75,000;

    B.    Upon proper motion, issue a preliminary injunction prohibiting Defendant from entering landowner property;

C. Issue permanent injunction prohibiting Defendant from entering landowner property until proper authority is obtained;

D. Award Plaintiff statutory, compensatory and nominal damages against Defendant for its violation of Plaintiff's constitutional rights and civil and statutory trespass violations;

E. Award Plaintiff costs, disbursement, reasonable attorney fees, interest and any other applicable provisions of the law;

F. Allow such other and further relief as the Court deems just, proper, and equitable.

Respectfully submitted,

Dated: July 15, 2019   MICHELE INMAN, ATTORNEY AT LAW, LLC

s/Michele Inman
Michele Inman, #71012
Attorney for Plaintiff
828 St. Paul Rd
Wildwood, MO 63021
636-399-7045
Inmanattorney.com
Michele@biggsmountain.com